AO 106 (Rev. 04/10) Application for a Search Warrant *(Page 1)*

U.S. DISTRICT COURT
N.D. OF N.Y.
FILED

AUG 18 2017

LAWRENCE K. BAERMAN, CLERK
ALBANY

## UNITED STATES DISTRICT COURT
### for the
### Northern District of New York

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | )    Case No. 1:17-mj-360-DJS |
| **Two iPhones and a 16 GB "DataTraveler 112"** | ) |
| **USB Flash Drive, as Further Described Below** | ) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property: *(identify the person or describe the property to be searched and its given location)*:

See Attachment A

located in the ___Northern___ District of ___New York___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment A

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒   evidence of a crime;

☒   contraband, fruits of crime, or other items illegally possessed;

☒   property designed for use, intended for use, or used in committing a crime;

☐   a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2252A | Receipt and Possession of Child Pornography |

The application is based on these facts:

See Attached Affidavit

☒   Continued on the attached sheet.

☐   Delayed notice of _____ days (give exact ending date if more than 30 days): Click here to enter a date. is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Attested to by the Applicant in Accordance with the Requirements of Rule 4.1 of the Federal Rules of Criminal Procedure.

_____
*Applicant's signature*

David Fallon, Special Agent, FBI
_____
*Printed name and title*

AO 106 (Rev. 04/10) Application for a Search Warrant *(Page 2)*

Sworn to before me and signed in my presence.

Date: _____ August 18, 2017 _____

_____

*Judge's signature*

City and State:    Albany, NY _____    Hon. Daniel J. Stewart, U.S. Magistrate Judge

*Printed name and title*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

### AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, David C. Fallon, being duly sworn, depose and state:

### INTRODUCTION

1.      I, David C. Fallon, duly state that I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed since May 1991.  I am currently assigned to the Albany, NY Division.  My assignments include investigating violations of federal law—specifically, violent criminal offenses against children, including those involving the sexual exploitation of children. Prior to my employment as a Special Agent, I was an attorney licensed to practice law in the State of Rhode Island. As a federal agent, I am authorized to investigate violations of the laws of the United States and I am a law enforcement officer with the authority to execute warrants issued under the authority of the United States.

2.      This affidavit is made in support of an application for a warrant to search the following devices, collectively referred to as "the Devices" throughout this affidavit:

        a.   A black iPhone, depicted in <u>Attachment A</u>, formerly used by Peter Farnum and currently in the possession of his wife, C.S., at their marital home in Ballston Lake, New York;

        b.   A white iPhone, depicted in <u>Attachment A</u>, formerly used by C.S. and currently in her possession at her residence in Ballston Lake, New York;

c.   A 16 GB "DataTraveler 112" USB Flash Drive (a/k/a Thumb Drive), depicted in <u>Attachment A</u>, currently in the the possession of C.S. at her residence in Ballston Lake, New York.

3.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the seizure and examination of property and the extraction from that property of electronically stored information for the evidence detailed in <u>Attachment A</u> to this application and search warrant.  These are items evidencing a violation of Title 18, United States Code, Section 2252A, involving the use of a computer in or affecting interstate commerce to transport, receive, distribute, possess and/or access child pornography.

4.      The Devices are currently in the possession of C.S. at her residence in Ballston Lake, New York.   As further described below, C.S. consents to the seizure and examination of these devices by your affiant and any other members of law enforcement with whom your affiant is working.  Your affiant therefore seeks this warrant, at least with regard to the white iPhone and the USB Flash Drive, out of an abundance of caution. (C.S. has told your affiant that she will voluntarily transfer custody of the Devices to your affiant at any time, with or without a warrant.)

**<u>BASIS OF INFORMATION</u>**

5.      The statements contained in this affidavit are based on my participation in the investigation of this matter, and on information that I have received from other members of the FBI.  Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.   I have set forth only the facts that I believe are necessary to establish

2

probable cause to believe that evidence of violations of Title 18, United States Code, Section 2252A, involving the use of a computer in or affecting interstate commerce to transport, receive, distribute, possess and/or access child pornography, as outlined in Attachment A, are located within the Devices, as described above.

### OVERVIEW OF INVESTIGATION

6.      On May 5, 2017, this Court authorized a warrant to search a Western Digital Hard Drive, Model WDC WD 7501AAES-60Z2A0, bearing serial number WD-WCATR2509490 (the "Hard Drive"). The signed affidavit relevant to that warrant is attached hereto as Attachment B, and the facts contained therein are hereby restated and reaffirmed by your affiant, and incorporated herein by reference.

7.      Based, in part, on the results of the examination authorized by the warrant signed by this Court on May 5, 2017, the Court signed an arrest warrant for Peter Farnum on July 25, 2017. The signed affidavit relevant to that warrant is attached hereto as Attachment C, and the facts contained therein are hereby restated and reaffirmed by your affiant, and incorporated herein by reference.[1]  Your affiant arrested Peter Farnum, as authorized by the warrant, on July 26, 2017. The case against Peter Farnum, docketed as 1:17-MJ-334 (DJS), is currently pending before this Court.

8.      In subsequent communication with C.S., the estranged wife of Peter Farnum, she informed your affiant of the existence of the Devices and the fact that they are in her possession at the residence that she formerly shared with Peter Farnum in Ballston Lake, New York.

---

[1] Paragraph 24 through 28 of the affidavit (Attachment C) discusses a recovery program found on the Hard Drive. In subsequent communication with C.S., she has informed your affiant that she downloaded the recovery program onto the Hard Drive after accessing Peter Farnum's user account and observing that what appeared to be pornography was being deleted, or "wiped" clean, as a result.

9.      Specifically, C.S. informed your affiant that she had observed the black iPhone and USB Flash Drive inside drawers of the desk (housed in a home office) on which the family computer containing the Hard Drive had sat from in or around October 2015 through in or around April 2016.  C.S. observed the white iPhone atop the same desk. C.S. secured the Devices from those locations.  C.S. reaffirmed to your affiant that the family computer had been used primarily by Peter Farnum, as she had a work-issued laptop that she used at home during the relevant time.

10.     C.S. further informed your affiant that she recognized the black iPhone as a cellular telephone formerly used by Peter Farnum as his primary cellular telephone.  The iPhone, along with other property, was left in the residence by Peter Farnum when he moved out of the marital home as a result of the deterioration of his and C.S.'s relationship.  (C.S. knew Peter Farnum to have replaced this iPhone as his primary cellular telephone sometime prior to his moving out of the residence.)

11.     C.S. identified the white iPhone as a cellular telephone that she had formerly used as her primary phone, but that she had retired (i.e. stopped using) and placed in storage. For that reason, C.S. was surprised to have seen the white iPhone atop the desk described in Paragraph 9, supra.  C.S. informed your affiant that she had not stored the white iPhone atop the desk, and did not know why or how it ended up in that location and in such close proximity to the family computer.  C.S. posited that Peter Farnum, who had access to the white iPhone and frequently used the family computer, had placed it there.

12.     C.S. informed your affiant that she was not sure of the origin of the USB Flash Drive, but that she believes she may have received it originally from her employer in relationship to her job.  C.S. is unaware of what, if anything, she may have loaded onto

the media storage device, and has no recollection of having connected it to the family computer or otherwise used it in relationship to the Hard Drive.

13.     A forensic examination of the Hard Drive performed by an FBI-employed computer scientist revealed that various devices had been connected to, and used in connection with, the Hard Drive during the period of time from before October 2015 through in and around April 2015. This included iPhone devices[2] and the "DataTraveler 112" USB Flash Drive.

14.     Based on (a) my training and experience, (b) my examination of the results of the forensic examination of the Hard Drive, and (c) conversation with the computer scientist who conducted the forensic examination, I believe that at least some of the child pornography recovered from the Hard Drive was "uploaded" (i.e., installed) onto the Hard Drive by way of a smartphone, such as an iPhone, or a similar device. Much of the child pornography found on the Hard Drive was found to be interspersed with other media including personal photographs, music (both individual songs and entire albums), newsclips, images copied and saved from the internet, and various "cookies" associated with web browsing. The nature of this material indicates that it was originally accessed via a smartphone or similar device, saved thereon, and then uploaded onto the Hard Drive by way of connecting the device to the Hard Drive through a USB port. Moreover, the uploading of these materials appears to be correlated in time and frequency to the recorded connection of iPhone devices to the Hard Drive.

---

[2] These cannot, as of now, be identified through the computer forensics as the black iPhone and white iPhone depicted in Attachment A.

## PROBABLE CAUSE

15.     Based on the foregoing, there is reason to believe that the Devices, currently in the possession of C.S., contain information and evidence, including but not limited to: (i) image or video files depicting minors engaged in sexually explicit poses and (ii) other Internet/digital/electronic based information as to the source of said images and video files.  Moreover, there is probable cause to believe that this evidence will corroborate information pertinent to the crime under investigation, as more particularly described in Attachment A.

## FORENSIC EVIDENCE

16.     As further described in Attachment A, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant—e.g., images of child pornography—but also forensic evidence that establishes how the device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the device because:

  a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file.  Moreover, web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords.

  b.  Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

6

c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is *not* present on a storage medium.

## CONCLUSION

17.     Based upon the above information, probable cause exists to believe that evidence of violations of Title 18, United States Code, Section 2252A, involving the use of a computer in or affecting interstate commerce to transport, receive, distribute, possess and/or access child pornography, as outlined in Attachment A of this Affidavit, will be found within the Devices.  Accordingly, I respectfully request that

7

this Court issue a search warrant authorizing seizure and examination of the contents

of the Devices described in the warrant, for the items described in Attachment A.

David C. Fallon
Special Agent
Federal Bureau of Investigation

Sworn to me this 18th day of August, 2017

Hon. Daniel J. Stewart
United States Magistrate Judge

8

## ATTACHMENT A
## ITEMS TO BE SEIZED

Items evidencing violations of Title 18, United States Code, Section 2252A, involving the use of a computer in or affecting interstate commerce to transport, receive, distribute, possess and/or access child pornography, the attempt to commit this offense, and evidence of the preparation to commit such offense:

1. The following devices, currently in the possession of C.S. in Ballston Lake, New York, and as depicted below:

    a. A black iPhone formerly used by Peter Farnum and currently in the possession of his wife, C.S., at their marital home in Ballston Lake, New York (indicated by a **red** arrow, below);

    b. A white iPhone formerly used by C.S. and currently in her possession at her residence in Ballston Lake, New York (indicated by a **green** arrow, below);

    c. A 16 GB "DataTraveler 112" USB Flash Drive (a/k/a Thumb Drive) currently in the the the possession of C.S. at her residence in Ballston Lake, New York (indicated by a **blue** arrow, below).



2. Documents, records, images, videos, emails, email software, associated email addresses, email address book contents, internet history, browsing history, internet search history, cookies, deleted files, bookmarked and favorite web pages, user typed web addresses, desktop shortcuts, path and file names for files opened through any media and/or image viewing software, anonymizing software, encryption software, chat software, chat files, chat logs, chat names used, peer to peer software, peer to peer files, contact lists, newsgroup postings by the user, IP addresses assigned, access logs, and other evidence pertaining to:

    a. The receipt, distribution, transmission, advertisement, and possession of images of minor children, including child pornography or child erotica;

3. Communications or activity, including but not limited to emails, chats, web site history, and search terms related to any of the above.

4. Records of personal and business activities relating to the operation and ownership of the media set forth the search warrant, such as contacts, notes (however and wherever written, stored, or maintained), and reference materials.

5. Records pertaining to accounts held with Internet Service Providers or of Internet use.

6. Records of address or identifying information for users of the device that is the subject of the search warrant, and any names, user IDs, electronic ID numbers, and passwords.

7. Documents and records, including, for example, electronically stored receipts, banking records, bills, statements, telephone records, and other similar indicia of ownership indicating occupation, possession, or control over the device to be searched.

8. All visual depictions, including still images, videos, films or other recordings of child pornography or minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256, and any mechanism used for the receipt or storage of the same, including but not limited to any and all computer passwords, counter-forensic programs, and other data security devices designed to restrict access to, hide, or destroy computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code.

9. Computer records and evidence identifying who the particular user was who distributed, transmitted, downloaded or possessed any child pornography found on any piece of media, or who searched for, researched, wrote about, or otherwise generated evidence of the items listed in paragraph 1, above (i.e., evidence of attribution).

**Attachment B**

AO 106 (Rev. 04/10) Application for a Search Warrant *(Page 1)*

U.S. DISTRICT COURT
N.D. OF N.Y.
**FILED**
MAY 05 2017

## UNITED STATES DISTRICT COURT
### for the
### Northern District of New York

LAWRENCE K. BAERMAN, CLERK
ALBANY

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | ) |
| **A Western Digital Hard Drive, Model WDC** | ) |
| **WD7501AAES-60Z2A0, Bearing Serial No.** | ) |
| **WD-WCATR2509490, Currently in the** | |
| **Custody of the FBI.** | |

Case No. 1:17-MJ-200-DJS

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property: *(identify the person or describe the property to be searched and its given location):*

**A Western Digital Hard Drive, Model WDC WD7501AAES-60Z2A0, Bearing Serial No. WD-WCATR2509490, Currently in the Custody of the FBI.**

located in the _____Northern_____ District of _____New York_____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment A

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☒  evidence of a crime;

☒  contraband, fruits of crime, or other items illegally possessed;

☒  property designed for use, intended for use, or used in committing a crime;

☐  a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18 U.S.C. 2252A | Receipt and Distribution of Child Pornography |

The application is based on these facts:

See attached affidavit

☒  Continued on the attached sheet.

☐  Delayed notice of _____ days (give exact ending date if more than 30 days): ___Click here to enter a date.___ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Attested to by the Applicant in Accordance with the Requirements of Rule 4.1 of the Federal Rules of Criminal Procedure.

_____
*Applicant's signature*

David C. Fallon, FBI
_____
*Printed name and title*

AO 106 (Rev. 04/10) Application for a Search Warrant *(Page 2)*

Sworn to before me and signed in my presence.

Date:            May 5, 2017

                                                                    *Judge's signature*

City and State:   Albany, NY              Hon. Daniel J. Stewart, U.S. Magistrate Judge

                                                                    *Printed name and title*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

### AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, David C. Fallon, being duly sworn, depose and state:

### INTRODUCTION

1.      I, David C. Fallon, duly state that I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed since May 1991. I am currently assigned to the Albany, NY Division. My assignments include investigating violations of federal law—specifically, violent criminal offenses against children, including those involving the sexual exploitation of children. Prior to my employment as a Special Agent, I was an attorney licensed to practice law in the State of Rhode Island. As a federal agent, I am authorized to investigate violations of the laws of the United States and I am a law enforcement officer with the authority to execute warrants issued under the authority of the United States.

2.      This affidavit is made in support of an application for a warrant to search:

a. One (1) Western Digital hard drive, Model WDC WD7501AAES-60Z2A0, bearing serial number WD-WCATR2509490, currently in the custody of the FBI ("the DEVICE").

3.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property, which is currently in law enforcement possession, and the extraction from that property of electronically stored information for the evidence detailed in <u>Attachment A</u> to

this application and search warrant. These are items evidencing a violation of Title 18, United States Code, Section 2252A, involving the use of a computer in or affecting interstate commerce to transport, receive, distribute, possess and/or access child pornography.

4.     The device is currently in storage at the office of the Federal Bureau of Investigation, 200 McCarty Avenue, Albany, NY. In my training and experience, I know that the device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same condition as they were when the device first came into the possession of the FBI.

## BASIS OF INFORMATION

5.     The statements contained in this affidavit are based on my participation in the investigation of this matter, and on information I have received from other members of the FBI. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence of violations of Title 18, United States Code, Section 2252A, involving the use of a computer in or affecting interstate commerce to transport, receive, distribute, possess and/or access child pornography, as outlined in Attachment A, are located within the DEVICE, as described above.

2

## OVERVIEW OF INVESTIGATION

6.     On April 29, 2017, your affiant received information from the United States Attorney's Office indicating that Peter Farnum, a member of the Saratoga County Sheriff's Office, may have received or possessed sexually explicit images of minors in or about 2016. Your affiant was further advised that evidence of the receipt and possession of said images may be found on a hard drive that, at the time your affiant was made aware of the matter, was in the possession of a private computer-forensic examiner located in Hamilton, Montana.

7.     On April 26, 2017, your affiant spoke with Donna Eno, the owner and operator of D. Eno Forensics, a private computer-forensic company located at 1052 Cherry Orchard Loop, Hamilton, MT. Eno advised your affiant that on or about April 18, 2017, she entered a contract for computer-forensic services with Courtney Seymour of Ballston Lake, NY. Prior to entering the contract, Eno and Seymour discussed what Seymour hoped to find during an examination of a hard drive taken from inside a computer tower that was located inside her home (i.e., the DEVICE). Seymour advised Eno that she was going through a divorce action with her husband, Peter Farnum, and that she had concerns about Farnum's use of the computer from which the DEVICE was taken. Specifically, Seymour advised Eno that she was concerned with her husband's use of the computer to view and download pornography. Upon entering into the contract for computer forensic services, Seymour shipped—via Federal Express—two hard drives to Eno. One hard drive was the DEVICE; the other was a Western Digital external hard drive that Seymour had purchased for use in copying files from the DEVICE.

8.     As requested, Eno performed a forensic examination of the DEVICE using the

3

forensic software program Forensic Tool Kit (FTK).  While reviewing the results, Eno

found hundreds of images recovered from the DEVICE's unallocated space.[1] Some of

these images, according to Eno, depicted minor females, approximately 7 to 8 years old,

posing in a sexually explicit manner. Eno described several of the images that she

observed as depicting 7- to 8-year-old females sitting nude with their legs spread apart

and displaying their genitalia to the camera in a lewd and lascivious manner. According

to Eno, a certified digital forensic examiner, the location of the images in the DEVICE's

unallocated space meant that they had been either downloaded or copied from another

source, stored on the DEVICE, and then deleted. Eno advised your affiant that she

observed in excess of 100 of these types of image files. After observing these images,

Eno contacted the FBI in Montana and turned over the two hard drives that Seymour had

sent to her, including the DEVICE. Special Agent Selena Devantier, based in Montana,

took possession of the hard drives and entered them as evidence into the files of the FBI.

9.     On April 28, 2017, your affiant interviewed Courtney Seymour in person

regarding the circumstances of her request to Donna Eno to forensically examine the

DEVICE.

10.     Seymour advised your affiant that she is currently married to Peter Farnum, but

that they separated in October 2015 and have remained separated since. Despite the

separation, Farnum had unlimited access to the marital residence from October 2015 to

April 2016 in order to care for the children he shared with Seymour while Seymour was

at work. Seymour continued to live in the home fulltime. In April 2016, Seymour

accessed Farnum's user account on the family computer (which contained the DEVICE)

---

[1] Unallocated space is where a computer operating system stores data that has been deleted but not yet
overwritten by new data.

because of her suspicion that Farnum used the computer to download and view pornography. At that time, the computer was kept in a home office. While searching the contents of Farnum's account, Seymour found numerous folders that appeared to contain images of adult pornography. While viewing the contents of some of these folders, the image files began to disappear. Believing that a wiping program was purposefully deleting content, Seymour shut down the computer in order to preserve what she had discovered. After confronting Farnum about the pornography, Seymour removed the computer from the house and brought it to Union College, where she worked as a librarian, and stored it in her office. The computer remained there—untouched and turned off—until April 2017 when Seymour decided to have the computer examined to ascertain the extent of Farnum's online viewing of pornography. Seymour sought the examination as part of a divorce and custody proceeding, and out of a general concern about Farnum around the children that they shared.

11.     First, Seymour brought the computer and an external hard drive that she had purchased for copying files from the computer to a computer-repair facility in Albany, NY. She explained to a representative of the company what she was looking for them to do. Specifically, she requested a review of the computer containing the DEVICE to discover the extent of Farnum's downloading and viewing of pornography. The computer-repair facility took possession of the computer and reviewed it as requested. Seymour was advised by a representative of the company that the DEVICE contained thousands of images and videos depicting adult pornography. The company copied these items to the external hard drive provided to them by Seymour, and advised her that it did not want to be involved in the matter any further. Because Seymour did not want to view

the pornographic images and videos herself, she searched online for further professional assistance. While searching, she came across Donna Eno's website advertising computer-repair and forensic services. Thinking that Eno was locally based, Seymour contacted Eno and discussed what she was looking for. Thereafter, Seymour entered into a contract with Eno to examine and analyze the DEVICE for (i) pornography, (ii) wiping software, (iii) Internet history, and (iv) evidence of infidelity by Farnum. Seymour also contracted to have Eno examine and analyze the external hard drive for evidence that it was connected to the DEVICE by the Albany computer-repair company in order to verify that the images located thereon were copied to it from the DEVICE. Thereafter, Seymour sent the DEVICE and the external hard drive to Eno via Federal Express. Subsequently, Seymour was alerted to Eno's discovery of child pornography in the DEVICE'S unallocated space. Seymour then contacted her attorney, John Della Ratta, Esq., and informed him of Eno's findings. The attorney, in turn, contacted the United States Attorney's Office to report what his client had told him.

## PROBABLE CAUSE

12.     Based on the foregoing, there is reason to believe that the DEVICE provided to Eno by Seymour contains information and evidence, including but not limited to: (i) image or video files depicting minors engaged in sexually explicit poses and (ii) other Internet based information as to the source of said images and video files. Moreover, there is probable cause to believe that this evidence will corroborate information pertinent to the crime under investigation, as more particularly described in Attachment A.

**FORENSIC EVIDENCE**

13.     As further described in <u>Attachment A</u>, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant—e.g., images of child pornography—but also forensic evidence that establishes how the device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the device because:

      a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file.  Moreover, web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords.

      b.  Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

      c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

      d.  The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be

merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is *not* present on a storage medium.

## CONCLUSION

14.  Based upon the above information, probable cause exists to believe that evidence of violations of Title 18, United States Code, Section 2252A, involving the use of a computer in or affecting interstate commerce to transport, receive, distribute, possess and/or access child pornography, as outlined in <u>Attachment A</u> of this Affidavit, will be found within the item listed above.  Accordingly, I respectfully request that this Court issue a search warrant authorizing examination of the contents of the DEVICE described in the warrant, for the items described in Attachment A.

David C. Fallon
Special Agent
Federal Bureau of Investigation

Sworn to me this 5th day of May, 2017

Hon. Daniel V. Stewart
United States Magistrate Judge

# ATTACHMENT A
# ITEMS TO BE SEIZED

Items evidencing violations of Title 18, United States Code, Section 2252A, involving the use of a computer in or affecting interstate commerce to transport, receive, distribute, possess and/or access child pornography, the attempt to commit this offense, and evidence of the preparation to commit such offense:

1. Documents, records, images, videos, emails, email software, associated email addresses, email address book contents, internet history, browsing history, internet search history, cookies, deleted files, bookmarked and favorite web pages, user typed web addresses, desktop shortcuts, path and file names for files opened through any media and/or image viewing software, anonymizing software, encryption software, chat software, chat files, chat logs, chat names used, peer to peer software, peer to peer files, contact lists, newsgroup postings by the user, IP addresses assigned, access logs, and other evidence pertaining to:

   a. The receipt, distribution, transmission, advertisement, and possession of images of minor children, including child pornography or child erotica;

2. Communications or activity, including but not limited to emails, chats, web site history, and search terms related to any of the above;

3. Records of personal and business activities relating to the operation and ownership of the media set forth the search warrant, such as contacts, notes (however and wherever written, stored, or maintained), and reference materials;

4. Records pertaining to accounts held with Internet Service Providers or of Internet use;

5. Records of address or identifying information for users of the device that is the subject of the search warrant, and any names, user IDs, electronic ID numbers, and passwords;

6. Documents and records, including, for example, electronically stored receipts, banking records, bills, statements, telephone records, and other similar indicia of ownership indicating occupation, possession, or control over the device to be searched.

7. All visual depictions, including still images, videos, films or other recordings of child pornography or minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256, and any mechanism used for the receipt or storage of the same, including but not limited to any and all computer

passwords, counter-forensic programs, and other data security devices designed to restrict access to, hide, or destroy computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code;

8. Computer records and evidence identifying who the particular user was who distributed, transmitted, downloaded or possessed any child pornography found on any piece of media, or who searched for, researched, wrote about, or otherwise generated evidence of the items listed in paragraph 1, above (i.e., evidence of attribution).

**Attachment C**

AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Northern District of New York

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| v. | ) | Case No. 1:17-mj-360-DJS |
| PETER FARNUM, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

DISTRICT COURT
N.D. OF N.Y.
FILED
JUL 25 2017
LAWRENCE K. BAERMAN, CLERK
ALBANY

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On

or about the date(s) of October 2015 through April 2016 in the county of Saratoga in the Northern District of New

York the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2252A(a)(2)(A) | Receipt of Child Pornography |
| 18 U.S.C. § 2252A(a)(5)(B) | Possession of Child Pornography |

This criminal complaint is based on these facts:
**See attached affidavit.**

☒   Continued on the attached sheet.

_____
Complainant's signature

Dave Fallon, Special Agent, FBI
_____
Printed name and title

Sworn to before me and signed in my presence.

Date:   July 25, 2017
_____
Judge's signature

City and State:   Albany, New York

Hon. Daniel J. Stewart, U.S. Magistrate Judge
_____
Printed name and title

## AFFIDAVIT

I, David C. Fallon, having been first duly sworn, do hereby depose and state as follows:

1.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since May 1991. I am assigned to the Albany Division, Albany, New York. My assignments include investigating violations of federal law—specifically, violent criminal offenses against children, including those involving the sexual exploitation of children. Prior to my employment as a Special Agent, I was an attorney licensed to practice law in the State of Rhode Island.

2.      I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7)—that is, I am an officer of the United States who is empowered by law to conduct investigations of offenses enumerated in Title 18, United States Code, Section 2516(1). As an FBI Special Agent, I am authorized to seek and execute federal arrest and search warrants for Title 18 criminal offenses, including offenses related to the sexual exploitation of minors in violation of Title 18, United States Code, Section 2251(a).

3.      I make this affidavit in support of an arrest warrant and criminal complaint charging PETER FARNUM, hereinafter "FARNUM," with knowingly receiving child pornography using a means and facility of interstate and foreign commerce, and in and affecting such commerce, in violation of Title 18 United States Code, Section 2252A(a)(2)(A); and knowingly possessing child pornography that has been transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, in violation of Title 18 United States Code, Section 2252A(a)(5)(B).

4.      The statements contained in this affidavit are based upon my investigation,

1

information provided by other law enforcement officers and FBI personnel, and on my experience and training as a Special Agent of the FBI. As this affidavit is being submitted for the limited purpose of securing an arrest warrant and criminal complaint, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that FARNUM has violated Title 18, United States Code, Sections 2252A(a)(2)(A) and 2252A(a)(5)(B).

### Details of the Investigation

5.      On April 25, 2017, your affiant received information that FARNUM, a deputy sheriff with the Saratoga County Sheriff's Office ("SCSO"), may have received and/or possessed sexually explicit images of minors in or around 2016. Your affiant was further advised that evidence of the receipt and possession of said images may be found on a hard drive that, at the time your affiant was made aware of the matter, was in the possession of a private computer-forensic examiner located in Montana.

6.      On April 26, 2017, your affiant spoke with D.E.,[1] the owner and operator of a computer-forensic business located in Hamilton, Montana. D.E. advised your affiant that on or about April 18, 2017, she entered a contract for computer-forensic services with C.S. of Ballston Lake, New York. Specifically, C.S. advised D.E. that she was concerned with FARNUM's use of a family computer to view and download pornography. Upon entering into the contract for computer forensic services, C.S. shipped—via Federal Express—two hard drives to D.E. One hard drive was the one removed from the family computer; the other was an external hard drive that C.S. had purchased for use in copying files from the hard drive.

7.      As requested, D.E. performed a forensic examination of the hard drive removed

---

[1] The names of third parties have been abbreviated throughout this affidavit. In each case, the full name is known to your affiant.

from the family computer. While reviewing the results, D.E. found hundreds of images recovered from the hard drive's unallocated space.[2] Some of these images, according to D.E., depicted minor females, approximately 7 to 8 years old, posing in a sexually explicit manner. D.E. described several of the images that she observed as depicting 7- to 8-year-old females sitting nude with their legs spread apart and displaying their genitalia to the camera in a lewd and lascivious manner. According to D.E., a certified digital forensic examiner, the location of the images in the hard drive's unallocated space meant that they had been either downloaded or copied from another source, stored on the hard drive, and then deleted. D.E. advised your affiant that she observed in excess of 100 of these types of image files. After observing these images, D.E. contacted an FBI field office in Montana. As a result, Montana-based FBI Special Agent Devantier took possession of the hard drives and entered them as evidence into the files of the FBI.

8.      On April 28, 2017, your affiant interviewed C.S. in person regarding her request that D.E. forensically examine the hard drives.

9.      C.S. advised your affiant that she is currently married to FARNUM, but that they separated in October 2015 and have remained separated since. Despite the separation, FARNUM had unlimited access to the marital residence in Ballston Lake, New York, from October 2015 to April 2016 in order to care for the minor children he and C.S. shared when C.S. was at work. C.S. continued to live in the home fulltime during that period.[3] On April 13, 2016, C.S. accessed FARNUM's user account on the family computer because of her suspicion that

_____

[2] Unallocated space is where a computer operating system stores data that has been deleted but not yet overwritten by new data.

[3] Except as noted below, see Paragraph 18, no one else besides FARNUM, C.S., and their three children lived at the house from October 2015 through April 2016. Moreover, the family employed no housekeeper, nanny, or similar domestic helper during that period who may have had access to the family computer by virtue of his or her employment.

FARNUM was using the computer to download and view pornography. The account was password protected, but C.S. was able to access the account by using a password that she was familiar with because FARNUM had used the same password in other contexts. At that time, the computer was kept in a home office at the house in Ballston Lake. While searching the contents of FARNUM's user account, C.S. found numerous folders that appeared to contain images of adult pornography. While viewing the contents of some of these folders, the image files began to disappear. Believing that a wiping program was purposefully and irretrievably deleting content, C.S. shut down the computer in order to preserve what she had discovered. C.S. confronted FARNUM about her findings the next day. FARNUM responded, "You shouldn't have done that," apparently referencing C.S.'s accessing of FARNUM's user account. After confronting FARNUM about the pornography, C.S. removed the computer from the house and brought it to her place of work. C.S. subsequently stored the computer in her workplace office. It remained there—untouched and powered down (i.e., turned off)—until April 2017, at which time C.S. decided to have the computer examined to ascertain the extent of FARNUM's online viewing of pornography. C.S. sought the examination as part of a divorce and custody proceeding and out of a general concern about FARNUM around the three minor children whom she and FARNUM share. (The children are currently 6 years old, 4 years old, and approximately 18 months old.)

10.     First, C.S. brought the computer and an external hard drive that she had purchased for copying files from the family computer to a computer-repair business in Albany, New York. C.S. explained to an employee of the business what she was looking to have done. Specifically, she requested a review of the family computer to discover the extent to which FARNUM had used it to download and view pornography. The computer-repair business took possession of the computer and reviewed it as requested. An employee of the business subsequently advised C.S. that the hard drive contained thousands of images and videos depicting adult pornography. The

4

business copied these items to the external hard drive provided by C.S., and advised C.S. that it

did not want to be involved in the matter any further.  Because C.S. did not want to view the

pornographic images and videos herself, she searched online for further professional assistance.

While searching, she came across D.E.'s website advertising computer-repair and forensic

services.  C.S. contacted D.E. and discussed what she was looking for.  Thereafter, C.S. entered

into a contract with D.E. to examine and analyze the hard drives.  (C.S. also contracted to have

D.E. examine and analyze the external hard drive for evidence that it was connected, by the

Albany computer-repair business, to the hard drive from the family computer in order to verify

that the images located on the hard drive taken from the family computer were in fact copied to

the external hard drive.)  C.S. shipped the hard drives to D.E. via Federal Express.

Subsequently, C.S. was alerted to D.E.'s discovery of child pornography in the hard drive's

unallocated space.  C.S. then contacted her attorney and informed him of D.E's findings.  The

attorney, in turn, contacted the United States Attorney's Office to report what C.S. had told him.

The USAO then contacted the FBI by way of your affiant.

      11.     The FBI in Montana transferred possession of the hard drives to the FBI Albany

Field Office in early May 2017.  After receiving the hard drives, your affiant applied for and

received a search warrant from this Court on May 5, 2017, to forensically examine the hard drive

from the family computer.  The warrant authorized investigators to search the hard drive for

evidence of the receipt and possession of child pornography.

<u>**Results of Forensic Examination of the Hard Drive**</u>

      12.     The forensic examination of the hard drive was conducted by a computer scientist

employed by FBI Albany.  Briefly summarized, the findings of the forensic examination include

the following:

5

a. 1,573 artifact files that contain hash values that match the hash values of identified/known child pornography ("CP") images.[4]

b. More than 5,000 other artifact files that appear to depict minors engaged in sexually explicit conduct or posed in a sexually suggestive manner. These image files were not part of any known CP databases used for comparison (see footnote 2 below for more information).

c. 7,856 files deleted from the system with names that indicate these files were child pornography.

13.     The majority of the files that matched known CP images (Paragraph 12(a), *supra*) were application data remnants in the RealPlayer program. The RealPlayer program automatically creates thumbnail image files of image files displayed—or "played"—within the program. The majority of the original files for which the thumbnails had been created were

---

[4] "Hashing" is the process of running a file or group of files through an algorithm to produce a new value. The properties of that value may vary depending on the use case of the algorithm. Some of the most common algorithms serve to hide data such that the original input can only be derived when a specific value such as a password is known. This is seen in your everyday password protected file. Other algorithms are designed to show similarity between files, sometimes called "fuzzy hashing." This might be useful if someone had 300 picture files and wanted to know which ones contained the most amount of sky blue. Lastly, algorithms exist that attempt to show that files are either identical or different. This use case is often implemented online to show that a supplied password matches a stored password, as well as in digital forensics to show that a copy of a file or drive is identical to a control, such as a known file of interest or an original copy of evidence.

The MD5 algorithm is this last type. It has a 128-bit hash value, meaning that the probability that any two different random files have matching MD5 hash values (an event referred to as a collision) is 1 in $2^{128}$, or very, very unlikely. The FBI and other law enforcement use MD5 to create hash values of files that are either known to be child pornography or are similar enough to child pornography that they are of investigative interest to an examiner. When conducting an examination, a common method for quickly locating and quantifying the presence of child pornography is to hash every file on a target drive, and compare those values to a databases of child pornography or media of investigative interest. If any values are found to match, those matches would be reviewed manually to confirm that they are indeed matches, and areas where matches are found would likely become focal points for a search for similar material that isn't already part of the database.

In this case, the Access Data FTK Imager version 3.1.3.2 was used to create a hash value for every file on the evidence item. Those hash values were compared to databases containing hash values of known child pornography or media of investigative interest using Griffeye Analyze. Griffeye determined that there were 1,573 hash values that matched hash values in databases of known child pornography images, and 5,714 hash values that matched databases of files of investigative interest.

found to have been deleted. The thumbnails, however, constitute digital copies of the original images that are only different from the original in that they are lower resolution than the original.

14.     The Windows account associated with the vast majority of the CP material was labeled "Pete." Of the 1,573 files that matched known CP hash values, 1,444 were found in file paths associated with this user account. (One file was found in the "C[.]" account; specifically, it was found in a deleted web-browsing artifact).[5] The remaining files were carved from backup or unallocated space.

15.     Additionally, the forensic examination revealed several artifacts that appear to attribute the activities involving the possession and receipt of sexually explicit images of children to FARNUM. These artifacts, as more specifically detailed below, include the use of an email account associated with FARNUM, game saves for a computer game titled "Civilization IV: Beyond the Sword," and internet searches indicating an interest in Homeland Security post-graduate studies and combat tactical systems.

### Timeline Analyses Indicating That FARNUM Used the Computer to Receive and Possess Child Pornography

16.     The following table details a timeline analysis for events that occurred on the family computer (i.e., hard drive) on Monday, October 12, 2015, between 11:54 a.m. and 12:27 p.m. According to records obtained from the SCSO, FARNUM worked the midnight to 8 a.m. shift on October 12, 2015, and was not on duty from 11:54 a.m. to 12:27 p.m. Moreover, according to C.S.'s typical work schedule, she was at work at the time.

| Time | Event | Source |
|---|---|---|
| 15:54 UTC | Web visit to url: URL: https://webmail.saratogacountyny.gov/versions/webmail/11.6.1- | Database entry time, |

---

[5] This second account shared the first name of C.S., whose full name is abbreviated throughout this affidavit.

| | | |
|---|---|---|
| | RC/sounds/notifier_05.mp3, Content Size (Bytes): 0, Record No: 10478 | Item 1 |
| 16:20 UTC | Google search for "combined tactical systems fet" | Database entry time, Item 2 |
| 16:27 UTC | 1 file of what appears to be a minor masturbating is imported by RealPlayer. This file is visually the same as the one imported on 1/7/2015. | File creation date, Item 3 |

| Item | Path |
|---|---|
| 1 | [ROOT]\Users\Pete\AppData\Local\Google\Chrome\User Data\Default\Cache\index; File Offset 304. [ROOT]\Users\Pete\AppData\Local\Google\Chrome\User Data\Default\Cache\data_1; File offset 624128 |
| 2 | [root]/System Volume Information/{aafd4727-00fe-11e6-89ae-d4856498a30e}{3808876b-c176-4e48-b7ae-04046e6cc752}. OS (Volume Shadow Copies) - Shadow Copy Creation Time: 2016-04-13 07:03:16 UTC (yyyy-mm-dd), Machine: Animal7, ID: {08e2216f-4ef2-4f7a-9f95- 1fe9e3698509}; File Offset 3434566749 |
| 3 | [NTFS]/[root]/Users/Pete/AppData/Local/Real/RealPlayer/Content/images/ 494D7774940948E8_1444667271.JPG |

This event depicts the user of the family computer accessing a webmail account hosted by

"saratogacountyny.gov" at 11:54 a.m. (UTC - 4). Significantly, FARNUM's employment email

address is "[xxxxxx]@saratogacountyny.gov" (emphasis added). At 12:20 p.m. (UTC - 4), the

user accessed the search engine "Google" to search the term "combined tactical systems."

Significantly, FARNUM is a member of the SCSO's Special Weapons and Tactics ("SWAT")

Team. At 12:27 p.m. (UTC - 4), the user imported a file ("494D7774940948E8_

1444667271.JPG") into the RealPlayer program. This file was reviewed by your affiant and

found to contain a screen capture from the Internet-based website "omegle.com." The image

depicts an approximately 10- to 13-year-old female lying on her back with her legs spread apart.

She is using her hands to touch her vaginal area and appears to be masturbating.

17.     The following table details a timeline analysis for events that occurred on the family

computer on October 19, 2015, between 9:46 a.m. and 12:27 p.m. According to records obtained

from the SCSO, FARNUM worked the midnight to 8 a.m. shift on October 19, 2015, and was not

on duty from 9:46 a.m. to 12:27 p.m. Moreover, according to C.S.'s typical work schedule, she

was at work at the time.

| Time | Event | Source |
|------|-------|--------|
| 13:46 UTC | 9 files flagged by Griffeye as being of investigative interest are imported into RealPlayer. These files appear to depict a minor; some depict the minor's exposed genitals. | File creation time, Items 1-9 |
| 14:08 UTC | Google search for "masters homeland security" | Database entry time, Item 10 |
| 16:27 UTC | Visited St. Josephs university's website page for their degree in homeland security. | Database entry time, Item 11 |

| Item | Path |
|------|------|
| 1 | [NTFS]/[root]/Users/Pete/AppData/Local/Real/RealPlayer/Content/images/ 56EE963F5D976600_1445262420.JPG |
| 2 | [NTFS]/[root]/Users/Pete/AppData/Local/Real/RealPlayer/Content/images/ BF36DDAA8225E139_1445262413.JPG |
| 3 | [NTFS]/[root]/Users/Pete/AppData/Local/Real/RealPlayer/Content/images/ BF36DDAA8225E139_1445262412.JPG |
| 4 | [NTFS]/[root]/Users/Pete/AppData/Local/Real/RealPlayer/Content/images/ A39309273790E3EE_1445262407.JPG |
| 5 | [NTFS]/[root]/Users/Pete/AppData/Local/Real/RealPlayer/Content/images/ 59918859C366E0CE_1445262397.JPG |
| 6 | [NTFS]/[root]/Users/Pete/AppData/Local/Real/RealPlayer/Content/images/ 0E2CF3E0F9EA2664_1445262390.JPG |
| 7 | [NTFS]/[root]/Users/Pete/AppData/Local/Real/RealPlayer/Content/images/ 82A5C042E38009CB_1445262382.JPG |
| 8 | [NTFS]/[root]/Users/Pete/AppData/Local/Real/RealPlayer/Content/images/ 6341480659CF6A45_1445262375.JPG |
| 9 | [NTFS]/[root]/Users/Pete/AppData/Local/Real/RealPlayer/Content/images/ 65AC96E85F794D03_1445262365.JPG |
| 10 | [ROOT]\Users\Pete\AppData\Local\Google\Chrome\User Data\Default\Cache\index; File Offset 288 [ROOT]\Users\Pete\AppData\Local\Google\Chrome\User Data\Default\Cache\data_2; File Offset 11276288 URL: https://www.google.com/gen_204?atyp=i&ct=1&cad= 1&sqi=3&q=masters%20homeland%20security&oq= masters%20homeland%20securiloty&gs_l=hp.10..0l2j0i22i30l2. 74918.94445.0.94673.50.27.12.11.11.0.636.10387.0j12j5-15.27.0....0...1c.1.64.psy-ab..2.48.9130.viwBUy84f2s&ei=WfkkVuvrK4OkjwPUrafQBg&zx=1445263741434 |
| 11 | [ROOT]\Users\Pete\AppData\Local\Google\Chrome\User Data\Default\Cache\data_3; File Offset 52240384 |

URL: http://www.sju.edu/int/academics/cas/grad/homelandsec/, Content Size (Bytes): 16356,

This event log shows that the user of the family computer imported images into the RealPlayer at 9:46 a.m. A review of these images found that they appear to depict an approximately 10- to 12-year-old female posed in various ways. With the exception of image 65AC96E85F794D03 _1445262365.JPG, each of the images depict this minor female displaying her naked vaginal area in a lewd in lascivious manner. At 10:48 a.m., the user conducts a "Google" search using the term "masters homeland security." According to C.S., whom I have interviewed about this timeline analysis, she never utilized the computer to search the internet for Master's programs in Homeland Security. C.S. supposed that FARNUM might have had an interest in such a program because it relates to his career in law enforcement.

18.     The following table details a timeline analysis for events that occurred on the family computer on December 29, 2015, between 8:08 p.m. and 9:25 p.m. At the time these events occurred, C.S. was not home for a period of approximately three days and two nights. At that time, FARNUM had access to the home and was at the home to visit and care for two of his and C.S.'s children. (Your affiant is informed that C.S.'s parents also had access to the house for the brief period during which C.S. was not home.) According to SCSO records, FARNUM did not work on December 29, 2015.

| Time | Event | Source |
|---|---|---|
| 20:08 – 20:27 UTC | 66 files flagged by Griffeye as matching known hash values for CP are imported into RealPlayer application data | File creation time, Items 1 |
| 20:30 – 21:25 UTC | 12 files containing names that suggest they are CP are deleted from the RealPlayer table, with origin file metadata indicating they had originally come from the "\Users\Pete\Downloads\off\" directory. | Database entry time, Item 2 |

| Item | Path |
|---|---|
| 1 | [NTFS]/[root]/Users/Pete/AppData/Local/Real/RealPlayer/Content/images/ E636F7707D56B3BE_1451419737.JPG |
| 2 | [NTFS]/[root]/Users/Pete/AppData/Local/Real/RealPlayer/library.db; "deleted_assets" table, id "18105", path "C:\Users\Pete\Downloads\off\lolitacastle_59_001_1.jpg" |

This event log shows that the user of the family computer imported images into the RealPlayer starting at 8:08 p.m. on December 29, 2015. Your affiant has viewed a number of these images. The images depict minor females, all approximately 8 to 11 years old, posing naked with their legs spread and displaying their naked genitalia to the camera.

      19.    The following table details a timeline analysis for events that occurred on the family computer on December 31, 2015 between 11:04 p.m. and January 1, 2016 at 2:45 p.m.:

| Time | Event | Source |
|---|---|---|
| 4:04 – 4:56 UTC | 1,758 files flagged by Griffeye as matching known hash values for CP are imported into RealPlayer application data | File creation time, Item 1 |
| 4:35 – 4:48 UTC | 2,645 files containing names that suggest they are CP are deleted from the RealPlayer table, with origin file metadata indicating they had originally come from the "\Users\Pete\Downloads\SMLL54MS\ SMLL54MS\SMLL54MS\Siterip My Little lolita 54 Models Sets" directory. | Database entry time, Item 2 |
| 13:01 - 17:14 UTC | 7 videogame save files for the game "Civilization [IV]: Beyond the Sword" are created | File creation time, Item 3 |
| 19:15 – 19:18 UTC | 462 files flagged by Griffeye as matching known hash values for CP are imported into RealPlayer application data | File creation time, Items 4 |
| 19:15 UTC | 2,020 files containing names that suggest they are CP are deleted from the RealPlayer table, with origin file metadata indicating they had originally come from the "\Users\Pete\Downloads\SMLL54MS\ SMLL54MS\SMLL54MS\Siterip My Little lolita 54 Models Sets" directory. | Database entry time, Item 5 |

| Item | Path |
|---|---|
| 1 | [NTFS]/[root]/Users/Pete/AppData/Local/Real/RealPlayer/Content/images/ 63442E72B00C3925_1451621061.JPG |
| 2 | [NTFS]/[root]/Users/Pete/AppData/Local/Real/RealPlayer/library.db; "deleted_assets" table, id "18835", path "C:\Users\Pete\Downloads\SMLL54MS\SMLL54MS\SMLL54MS\Siterip My Little Lolita 54 Models Sets\CrisNAda-100\crisnada001.jpg" |
| 3 | [NTFS]/[root]/Users/Pete/Documents/My Games/beyond the sword/Saves/single/Darkhorse V AD-1983.CivBeyondSwordSave |
| 4 | [NTFS]/[root]/Users/Pete/AppData/Local/Real/RealPlayer/Content/images/ 49DB0E32A5601380_1451675881.JPG |
| 5 | [NTFS]/[root]/Users/Pete/AppData/Local/Real/RealPlayer/library.db; "deleted_assets" table, id "22870", path "C:\Users\Pete\Downloads\SMLL54MS\SMLL54MS\SMLL54MS\Siterip My Little Lolita 54 Models Sets\Viola_61\viola061.jpg" |

The above timeline indicates that the user of the "Pete" account imported known child sexual exploitation images into the RealPlayer beginning at 11:04 p.m. on December 29, 2015 (UTC -5). The user subsequently deleted child pornography from the RealPlayer program. Further, several hours later, the timeline indicates that the user of the "Pete" account saved gaming activity ("Civilization IV: Beyond the Sword") seven times over the course of four hours. Two hours later, the user imported more known child sexual exploitation images into the RealPlayer program. Afterward, the user again deleted child pornography from the RealPlayer program. According to SCSO records, FARNUM was not on duty at the time of these activities. Moreover, according to C.S., FARNUM was then living at the Ballston Lake marital house helping with their three children.

20.      According to C.S., she does not play "Civilization IV: Beyond the Sword" and, in fact, no one at the house used the computer to play any computer games besides FARNUM. Moreover, your affiant has determined that "Civilization IV: Beyond the Sword" is a turn-based strategy game that allows players to build civilizations following the invention of gunpowder. As described in Paragraph 10, *supra*, C.S. and FARNUM share children who, in and around

12

December 2015, were approximately 4 years old, 18 months old, and just born—all too young to have signed on and played the game themselves. *See, generally, Civilization IV: Beyond the Sword*, WIKIPEDIA.ORG, https://en.wikipedia.org/wiki/Civilization_IV:_Beyond_the_Sword (last visited July 24, 2017). Additional activity on the computer linking the "player" of "Civilization IV" to the importation of sexually explicit images of minors is present in the January 8, 2016 activity log below:

| Time | Event | Source |
|---|---|---|
| 18:43 – 18:45 UTC | 669 files flagged by Griffeye as matching known hash values for CP are imported into RealPlayer application data | File creation time, Item 1 |
| 19:27 UTC | 1 videogame save file for the game "Civilization [IV]: Beyond the Sword" is created | File creation time, Item 2 |
| 21:58 UTC | 433 files containing names that suggest they are CP are deleted from the RealPlayer table, with origin file metadata indicating they had originally come from the "\Users\Pete\Downloads\LSM08_-_pic_sets\LSM08 - pic sets" directory. | Database entry time, Item 3 |

| Item | Path |
|---|---|
| 1 | [NTFS]/[root]/Users/Pete/AppData/Local/Real/RealPlayer/Content/images/00829E5244271E8A_1452278623.JPG |
| 2 | [NTFS]/[root]/Users/Pete/Documents/My Games/beyond the sword/Saves/single/Darkhorse V AD-2029-January.CivBeyondSwordSave |
| 3 | ? real player asset database .... Number 26359 C:\Users\Pete\Downloads\LSM08_-_pic_sets\LSM08 - pic sets\01\LSM-001_001.jpg |

## Use of RealPlayer to View Child Pornography on the Computer

21.     RealPlayer is a cross-platform media management program that allows users to consolidate their media library through one program. It also provides capabilities to download videos found via web browsing, play music or movies, share media with peers, cast media to supported devices, and sync media between a user's devices via cloud service. By default, RealPlayer will import media from a user's "Downloads," "Music," "Pictures," and "Videos"

13

folders. The computer scientist who performed the forensic analysis on the computer found the

following information concerning the use of the RealPlayer program:

22.     Windows Prefetch logs recorded the following statistics for RealPlayer:

| Prefetchfilename_realplayerX | | | |
| --- | --- | --- | --- |
| Program | First Run | Last Run | Times Ran |
| RealPlayer | 12/15/11 4:40PM | 4/14/16 6:37PM | 6840 |

According to the results of the forensic examination, RealPlayer stores thumbnails for content

imported into the RealPlayer library on the computer at "[root]/Users/Pete/AppData/Local/Real/

RealPlayer/Content." Microsoft Windows hides the AppData folder and its subfolders from users

by default using a feature called "hidden files and folders" that is designed to protect users from

meddling with elements that applications may rely on to operate, so an average Windows user

may not have any idea that such a folder exists or what content is stored in it. Note that 1,388 of

the 1,573 files whose hash values matched known CP were found in this location.

23.     RealPlayer stores information about the media it finds in a database called

"Library.db" located at "[root]/Users/%username%/AppData/Local/Real/RealPlayer/Library.db."

One of the tables in this database, "deleted_assets," contains information about files that were

deleted.  This table was searched for certain filename strings that indicate a file may have been

child pornographic material or of investigative interest.  The search terms included the following:

- "Lolita" – Lolita complex refers to sexual attraction to younger girls

- "pthc" / "pt" / "ptc"  - Pre-Teen Hard Core / pre-teen

- "LSM" – Little sex machine

- # "yo" – Years old, where "#" is any integer value lower than 18.

- "kidz" – Referring to kids.

In total, forensic analysis uncovered 7,856 filenames on the computer that matched the above

14

filters, suggesting that a large amount of child pornographic material had been viewed in RealPlayer and subsequently deleted.

## Use of Cleaning and Recovery Programs on the Computer

24. In addition to the foregoing, two forensic programs of interest were found on the family computer during the forensic examination thereof by the FBI's computer scientist. One such program was CCleaner, a popular tool for cleaning up computers. (From the publisher's website: "CCleaner is the number-one tool for cleaning your PC. It protects your privacy and makes your computer faster and more secure!") This includes securely erasing files, browser history, and registry entries. While the software is not itself malicious, it could be used to destroy evidence of malicious activity. Prefetch logs indicated the following usage statistics for Ccleaner:

| Prefetchfilename_ccleanerX | | | |
|---|---|---|---|
| Program | First Run | Last Run | Times Ran |
| CCleaner (file erasing) | 4/14/16 1:59PM | 4/14/16 2:16PM | 6 |

25. The second forensic program found during the examination was Recuva, a popular tool for recovering deleted files. (From the publisher's website: "Recuva can recover pictures, music, documents, videos, emails or any other file type you've lost. And it can recover from any rewriteable media you have: memory cards, external hard drives, USB sticks and more!") Prefetch logs indicate the following usage of the program:

| Prefetchfilename_recuvaX | | | |
|---|---|---|---|
| Program | First Run | Last Run | Times Ran |
| Recuva (file recovery) | 4/14/16 1:59PM | 4/14/16 2:05PM | 3 |

26. The below table shows the metadata for a folder labeled "Rec," located at "/Users/Pete/Downloads/Desktop/Rec."

| "Rec" directory metadata | |
|---|---|
| Location | "[root]/Users/Pete/Downloads/Desktop/Rec" |
| Created | 4/14/2016 2:05:59 PM |
| Accessed | 4/14/2016 2:22:47 PM |
| Modified | 4/14/2016 2:22:47 PM |

Note the following: The "Rec" folder was created at the same time as the last known runtime for Recuva, and contained 37 files that had hash values matching known child pornography image files. Thirty of these files were previously deleted from the "Rec" folder.

27.     Based on the foregoing, your affiant believes that on April 14, 2016, in response to a discussion FARNUM had with C.S. about her discovery of pornography on the family computer on April 13, 2016 (see Paragraph 10, supra), FARNUM downloaded the Recuva and Ccleaner software (which may in fact have installed together as they are from the same publisher). CCleaner was first run on the computer on April 14, 2016; Recuva was run three times between 1:59 p.m. and 2:05 p.m. on that same day. When it was run, Recuva recovered a large amount of files that were placed into the "Rec" folder. As described above, 37 of those files had hash values matching known child-pornography image files. According to SCSO records, FARNUM did not work on April 14, 2016.

28.     Your affiant reviewed the 37 files that were found inside the "Rec" file. Your affiant observed the following: These images depict minor females, approximately 9 to 13 years old, posing in a sexually explicit manner and engaged in sexual activity. For example, one image observed by your affiant depicts a minor female, approximately 9 to 10 years old, sitting in a chair, completely nude. Her legs are spread apart and drawn up toward her chest, thereby exposing her naked vaginal area in a lewd and lascivious manner. A second image depicts a minor female, approximately 8 to 10 years old, completely nude, straddling a nude adult male. The male's penis is inserted into the child's vagina.

16

## Conclusion

29.     Based upon the above information, there is probable cause to believe that FARNUM received and possessed child pornography between about October 2015 and April 2016 in the Northern District of New York.

WHEREFORE, I respectfully request that the Court issue a warrant for FARNUM's arrest and a complaint charging FARNUM with violation of Title 18, United States Code, Section 2252A(a)(2)(A), and violation of Title 18, United States Code, Section 2252A(a)(5)(B).

David Fallon, Special Agent
Federal Bureau of Investigations

Sworn to me this 25th day of July, 2017.

Hon. Daniel J. Stewart
United States Magistrate Judge

17